**STATE of Missouri, Respondent,**

v.

**Kelly YOUNGER, Appellant.**

**No. WD 32537.**

Missouri Court of Appeals,
Western District.

March 16, 1982.

Motion for Modification Overruled and
Opinion Modified on Court's Own
Motion May 4, 1982.

Paul Anthony White, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Carl S. Yendes, and Philip M. Koppe, Asst. Attys. Gen., Kansas City, for respondent.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

KENNEDY, Judge.

Appellant was convicted upon a jury-waived trial to the court of two sales of lysergic acid dilthylamide (LSD), a Schedule I controlled substance, on December 5 and

December 6, respectively, 1979, and was sentenced to two consecutive six-year terms. Sec. 195.200.1(4), RSMo 1978.

Defendant, admitting the sales to one Delilah Stahl (who turned out to be an undercover police officer), put forward a defense of entrapment, Sec. 562.066, RSMo 1978.

On this appeal defendant contends the court erred in refusing to require the state to disclose the identity of a confidential informant who figured in the drug sales, and contends also that the evidence was insufficient for a prima facie case in that the evidence failed to show the absence of entrapment.

The state's evidence in chief was stipulated by the state and the defendant, and showed, as noted above, that defendant did make the controlled substance sales of which he was accused and convicted, the first sale for $30 and $20 for the second. He claimed, however, that he had been induced to do so by one Gene Parks, an acquaintance of his (their relationship will be described later). Parks, before he introduced Delilah to defendant and before the first sale, had represented to him that Delilah was his girlfriend and needed the drugs for the alleviation of pain. Defendant further testified that Gene Parks had even supplied him with the drugs and that he, defendant, had paid to Parks the money he had received from Delilah for the drugs. Parks, as it turned out, was a confidential informant working with the police. He introduced Delilah, the drug purchaser, to the defendant at the time she made the first buy on December 5. She returned alone and made the second purchase on December 6. The two separate sales were a feature of the scheme which had been proposed by Parks, according to defendant's testimony. Defendant's contention is not that Delilah in any way entrapped him, but that Parks had done so.

1. *Court's overruling of motion to compel disclosure by the state of identity of confidential informant.*

■ Defendant's first complaint here is that the court erred in denying his "motion to compel disclosure of identity of confidential informant or in the alternative to dismiss the indictment".

Defendant says in his brief:

The trial court, in denying the defendant's motion to learn the true identity of the confidential informant, thereby effectively deprived the defendant of the opportunity to (1) take the deposition of the confidential informant; (2) have him available for trial; and (3) to have the benefit of his testimony which would have corroborated the defendant's testimony about the entreaties plied upon the defendant to induce him to overcome his natural inclination for lawful conduct, and to finally succumb to the pressure exerted by the confidential informant which resulted in the defendant distributing the controlled substances as charged in the indictment.

Whether defendant had a right in the circumstances of this case to have the identity of the confidential informant disclosed to him, see *State v. Nafziger*, 534 S.W.2d 480 (Mo.App.1975), is a question we do not need to reach. The defendant was personally acquainted with Parks and already, by the time he filed his motion for disclosure, knew also that he was the confidential informant. To have the state name him and say in a formal disclosure that he was the confidential informant who figured in arranging the drug sales would have given defendant nothing he did not already have. The following facts will show this to have been the case:

Defendant had been placed in contact with Delilah, the drug buyer, by Parks. Gene Parks was his correct name. Defendant knew him before the events leading up to the present case. Defendant testified: "See, I knew his stepbrothers for many years and, you know, he has come over to the house. I thought we were friends. I'll put it to you that way, we were friends." At the time of the inception of the present

case, Parks (according to Delilah's testimony) was working with the police. Parks' connection with the police was of course unknown to the defendant until sometime after the drug sale. How and when defendant learned that Parks was in league with the police the record does not show. What it does show is that when his motion to compel disclosure was filed on April 21, 1980—some months before the trial, which began January 6, 1981—he knew that Gene Parks was the confidential informant. The suggestions filed therein—which identify Gene Parks not by name but by the role he played in the transaction—show this knowledge quite clearly. The court's sustaining the motion, and the state's complying therewith, would have been of no help to defendant in his preparation of the case. The denial of the motion to disclose identity of confidential informant was therefore not prejudicial to defendant.[1]

Defendant says in oral argument on appeal for the first time that the state was concealing Parks, but nothing in the record supports this idea. The record does not show that Mr. Parks was unavailable to the defendant before the trial for the purpose of taking his deposition or interviewing him, or at the time of the trial for the purpose of securing his attendance.

2. *Sufficiency of state's evidence to show absence of entrapment.*

For his second point, defendant says he was entitled to a directed verdict of acquittal because the defendant testified to facts which if believed constituted entrapment of defendant and the state did not rebut the testimony of entrapment. Defendant makes this argument upon the basis of certain language found in the entrapment cases. Those cases hold, defendant argues, that once evidence of entrapment enters the case, by whoever presented, it becomes the onus of the state to disprove entrapment as a part of its burden of proof upon the whole case to prove defendant's guilt. It is not an affirmative defense which defendant has the burden to establish. *State v. Wilson*, 615 S.W.2d 571, 572[1] (Mo.App.1981); *State v. Weinzerl*, 495 S.W.2d 137 (Mo.App. 1973); *U. S. v. Groessel*, 440 F.2d 602, 606 (5th Cir. 1971); cert. denied 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971); *Martinez v. U. S.*, 373 F.2d 810, 812 (10th Cir. 1967). The state may not rest upon proof of the elements of the offense, defendant goes ahead to maintain, then defend a conviction solely by saying the finder of fact could reject the evidence of entrapment as unworthy of belief. He cites for that proposition *State v. Weinzerl,* supra at 141; *U. S. v. Bueno*, 447 F.2d 903, 906[2] (5th Cir. 1971), cert. denied 411 U.S. 949, 93 S.Ct. 1931, 36 L.Ed.2d 411 (1973).

The state argues, on the other hand, that the testimony of the defendant himself and of his witness Ellis, who testified to Gene Parks' initiative in inducing defendant's drug sales to Delilah, were not sufficient to inject the issue of entrapment into the case, citing *State v. Disandro*, 574 S.W.2d 934, 935–936 (Mo.App.1978); *State v. Admire*, 495 S.W.2d 132, 134 (Mo.App.1973). But we do not need to consider the questions posed by defendant's and the state's opposing contentions on this point, for a second contention of the state's is dispositive of defendant's contention. That contention is that there was evidence, as shown in the next paragraph, which tended to establish absence of entrapment.

Without reaching the question whether such affirmative evidence was necessary (as the defendant maintains and the state denies) we hold that there was affirmative testimony of defendant's predisposition to commit the crime, and that Gene Parks and Delilah Stahl simply furnished him with an opportunity. At the time of the December 6 sale, defendant told

---

1. In an analagous situation, Judge Steelman wrote in *State v. Sykes*, 628 S.W.2d 653 (Mo. 1982): "The state can be condemned for non-disclosure of physical evidence if the facts indicate the state had possession of the items unknown to the defense and did not disclose the items, not if the defense has knowledge of the items. *State v. Joyner*, 571 S.W.2d 776, 778 (Mo.App.1978)."

Stahl that he could not sell to her both "dimes" of the "crank"[2] which he then had, because he had promised one to another friend. He also told her that he could supply her with quantities of "acid" in the future. According to Delilah's testimony he later called her and offered drugs for sale. This testimony supports a finding that defendant had not been over-persuaded, but was "ready and willing to engage in such conduct". Sec. 562.066, RSMo 1978. The evidence is sufficient to support the judgment of conviction.

All concur.

2. "Crank" is a street name for crystal bipheta-  mine, and a "dime" is a measure thereof.